[No. 42444.    En Banc.    December 27, 1973.]

THE CITY OF SEATTLE, *Appellant*, v. FRANK LEON HINKLEY, *Respondent.*

*A. L. Newbould, Corporation Counsel,* and *Philip M. King, Assistant,* for appellant.

*Victor V. Hoff,* for respondent.

WRIGHT, J.—On November 18, 1971, respondent was the manager of the Lucky Lady Tavern in Seattle. On said date, this tavern operated under authority of a license issued by the Washington State Liquor Control Board, as well as under a cabaret license issued by the City of Seattle.

On the night of November 18, 1971, respondent was arrested and charged by criminal complaint with allowing a female employee to expose her breasts during performance of a dance in the tavern in violation of a Seattle ordinance, being section 16A of ordinance No. 16046, as amended by ordinance No. 94554 (Seattle City Code § 12.11.175).

On December 29, 1971, respondent was convicted of the above charge in Seattle Municipal Court, and appealed to superior court. A trial de novo without a jury commencing April 3, 1972, resulted in an order of dismissal. The City of Seattle has taken this appeal.

The first issue raised on appeal is whether the judgment is appealable. We hold it is appealable.

Appellant has correctly relied upon ROA I-14(1)(c) since the validity of an ordinance was drawn into question on the grounds of repugnancy to the constitutions of the United States and the State of Washington.

The second issue raised on appeal is whether the ordinance in question is constitutionally valid.

Essentially, ordinance No. 94554 (Seattle City Code § 12.11.175) prohibits bar and tavern owners and managers from permitting "any female employee to appear therein with one or both breasts and/or the lower portion of the torso, wholly or substantially exposed to public view." The recent case of *California v. LaRue,* 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972), holds that in the licensing of bars and nightclubs to sell liquor by the drink, the states

have broad latitude to control the manner and the circumstances under which liquor may be dispensed. The court further states that, in this context, the conclusion that the sale of liquor by the drink and certain forms of entertainment should not take place simultaneously in licensed establishments is not an unreasonable or unconstitutional act on the part of a state.

An even more pertinent case is *Crownover v. Musick,* 9 Cal. 3d 405, 509 P.2d 497, 107 Cal. Rptr. 681 (1973), which relates to the validity of several local ordinances enacted under proper authority of the state and which are penal in nature. The ordinances in the California counties and city involved in that case are similar to the ordinance herein, in many respects.

The California Supreme Court held that freedom of speech is not an absolute right, and at page 419 stated that "general regulatory statutes, *not intended to control the content of speech* but incidentally limiting its unfettered exercise" may be valid. (Italics by the California court.) The ordinances in question were held valid.

Another recent case is *Hoffman v. Carson,* 250 So. 2d 891 (Fla. 1971) in which the Florida Supreme Court held a statute valid which prohibited exposure of the body or the going naked in certain public places. The basis of that holding was that such exhibitions are conduct and not speech. The court said in part at page 893:

> Appellant loses sight of the distinction between speech and conduct. The statute is not directed at First Amendment rights of free expression, nor does it concern itself with obscenity . . . Rather, it is directed at the exposure of sexual organs and nudity, a matter of conduct thought to be a crime under the common law [cases omitted] and generally considered as having a reasonable relationship to the public welfare, and, therefore, within the police power of the Legislature.

That case involved a performance in a cocktail lounge wherein intoxicating liquors were sold.

The neighboring State of Oregon has reached a similar

result in *Portland v. Derrington*, 253 Ore. 289, 292-93, 451 P.2d 111 (1969) wherein it was said:

> When nudity is employed as sales promotion in bars and restaurants, nudity is conduct. As conduct, the nudity of employes is as fit a subject for governmental regulation as is the licensing of the liquor dispensaries and the fixing of their closing hours.

The valid power of the state to promulgate liquor regulations has been extended to cities and municipalities to the extent specified by RCW 66.08.120 and RCW 66.28.080.

RCW 66.08.120 provides as follows:

> Preemption of field by state—Exception. No municipality or county shall have power to license the sale of, or impose an excise tax upon, liquor as defined in this title, or to license the sale or distribution thereof in any manner; and any power now conferred by law on any municipality or county to license premises which may be licensed under this section, or to impose an excise tax upon liquor, or to license the sale and distribution thereof, as defined in this title, shall be suspended and shall be of no further effect: *Provided, That municipalities and counties shall have power to adopt police ordinances and regulations not in conflict with this title or with the regulations made by the board.*

(Italics ours.) Prior to the enactment of this statute in 1933, the exception was provided by case law. *Seattle v. Hewetson,* 95 Wash. 612, 164 P. 234 (1917).

RCW 66.28.080 provides as follows:

> Permit for music and dancing upon licensed premises. *It shall be unlawful for any person, firm or corporation holding any retailer's license to permit or allow upon the premises licensed any music, dancing, or entertainment whatsoever, unless and until permission thereto is specifically granted by appropriate license or permit of the proper authorities of the city or town in which such licensed premises are situated,* or the board of county commissioners, if the same be situated outside an incorporated city or town: *Provided,* That the words "music and entertainment," as herein used, shall not apply to radios or mechanical musical devices.

(Italics ours.) Therefore, the City of Seattle has been authorized by statute to enact the challenged ordinance.

The third issue raised on appeal is whether the ordinance in question violates RCW 49.60.180 and RCW 49.12.200, dealing with employment discrimination based upon sex. The statutes relied on by appellant relate to employment and are not applicable.

From the foregoing, it is concluded that the Seattle ordinance is a valid and enforceable ordinance. Judgment of the superior court is accordingly reversed.

HALE, C.J., and HUNTER, HAMILTON, and STAFFORD, JJ., concur.

BRACHTENBACH, J. (concurring)—For reasons stated hereafter, I concur in the result reached by the majority. I cannot agree that *California v. LaRue,* 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972), is as sweeping in its holding as it is characterized by the majority. Neither can I find the clarity of guidelines suggested by Justice Utter in his dissent.

I find the holding of *LaRue* somewhat difficult to rationalize in the context of a traditional First Amendment analysis. Apparently the court recognized that some of the prohibited acts of conduct involved in that case would enjoy First Amendment protection other than in the context of state regulated liquor establishments. The court's treatment of the First Amendment issue has been criticized. *See* 6 Akron L. Rev. 247 (1973); 61 Georgetown L.J. 1577 (1973); 68 Nw. U.L. Rev. 130 (1973); and 40 Tenn. L. Rev. 465 (1973).

Nonetheless the court clearly stops short of requiring a showing of obscenity as the Utter dissent would require. It specifically said at page 116:

> [W]e do not believe that the state regulatory authority in this case was limited to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with some forms of communicative conduct in

*O'Brien, supra. [United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968).]

While the court did, in a footnote, draw attention to the possible distinction between the constitutionality of a law on its face and in application, I do not believe that distinction is controlling here in view of the conduct involved. I believe the court's decision means that the activity proscribed must contain a recognizable communicative element before First Amendment rights are to be considered, again whether on the face of the prohibiting law or in the application thereof.

In this case I can ascertain no communicative element, as required by *LaRue,* to barebreasted dancing when the dancer admitted that her dance was no different whether she performed fully clothed or "topless." It is not the dance per se which is prohibited, but rather its performance in a state of almost total nudity. While *LaRue* may not go so far as to prohibit the dance per se, indeed it should not go that far, it does permit the ban, in a state licensed liquor establishment, against the nudity aspect of the dance. *See Paladino v. Omaha,* 471 F.2d 812 (8th Cir. 1972), which upheld a prohibition against topless entertainment even though it was not found to be obscene.

UTTER, J. (dissenting)—The majority reverses the trial court's dismissal of a prosecution against a tavern manager, under a city ordinance prohibiting such a person to permit a female employee of the tavern to appear therein with breasts or lower torso exposed. The reasoning used is that the ordinance's validity "is assured by . . . *California v. LaRue,* 409 U.S. 109" which it finds allows "the states . . . broad latitude to control the manner and the circumstances under which liquor may be dispensed . . . notwithstanding the First and Fourteenth Amendments." I cannot agree with the majority's application and interpretation of *LaRue.* This difference is starkly revealed in the majority's failure to demonstrate why the *application* of this city ordinance in the facts of this case is constitutional,

and in its frank admission that it reads *LaRue* to permit absolute power in state liquor regulation *"notwithstanding"* First and Fourteenth Amendment protections.

I concur that the government has broad powers of liquor control under common law, state statute, and the twenty-first amendment to the United States Constitution. But I maintain, as I believe the rulings of the United States Supreme Court require, that this broad power is not absolute and those executing it are answerable to the principles of the First and Fourteenth Amendments. Since I find the prosecuted behavior protected by First Amendment expression, and there being no proof or even allegation that the expression here was obscene, I would affirm the trial court's conclusion that to permit a criminal conviction under such circumstances would be unconstitutional.

The majority relies solely on *LaRue*, failing to recognize that what was at stake there was the power of the liquor control agency to regulate entertainment in liquor establishments, whereas in the case now before us there is no challenge to such authority.

The *LaRue* case was a civil suit brought by holders of California liquor licenses and dancers at licensed premises, seeking to enjoin the California Department of Alcoholic Beverage Control and its director from enforcing certain adopted regulations pertaining to liquor licensing. Apparently, because of the sordid record established at the department hearings which revealed, in part, incidences of sexual conduct between entertainers and customers and acts of violence in the premises regulated, they promulgated the rules challenged which require, among other things, that entertainers must perform on a stage at least 6 feet from the audience. In other words, the challenge in *LaRue* was to the regulations on their face, not in application, as no particular license holder or dancer was being criminally prosecuted or being placed in jeopardy of license suspension or revocation.

The United States Supreme Court, in reviewing the de-

partment rules regulating entertainment in licensed establishments concluded that:

> Based on the evidence from the [department] hearings
> . . .
>
> . . .
> [t]he Department's conclusion . . . that *certain* sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the *added presumption* in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations *on their face* violate the Federal Constitution.

(Italics mine.) *California v. LaRue,* 409 U.S. 109, 115, 118-19, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972). Thus, based on an exceedingly disturbing record often revealing criminal occurrences and given the authority to the states by the Twenty-first Amendment, the challenged regulations were held valid on their face. *LaRue* did not involve the *application* of an ordinance to specific misconduct as criminal misconduct and cannot be given that broad a scope.

Justice Rehnquist, speaking for the court, warned of this very misreading of the *LaRue* conclusion by stating at the close of the opinion at page 119, note 5:

> Because of the posture of this case, we have necessarily dealt with the regulations *on their face,* and have found them to be valid. The admonition contained in the Court's opinion in *Seagram & Sons* v. *Hostetter,* 384 U.S. 35, 52 (1966), is equally in point here: "Although it is possible that *specific future applications* of [the statute] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. *We deal here only with the statute on its face.* And we hold that, so considered, the legislation is constitutionally valid."

(Italics mine.) The Supreme Court admonition that possible future applications may present constitutional problems which are not resolvable by the finding that the challenged provisions on their face are valid is exactly what we are confronted with in this case.

We are therefore compelled to review this application of an ordinance pertaining to liquor establishment behavior under the controlling constitutional provisions—the First and Twenty-first Amendments. *LaRue* does not solve this problem.

I agree with Justice Stewart's concurring opinion in *LaRue*, at page 119, which states: "A State has broad power under the Twenty-first Amendment to specify the times, places, and circumstances where liquor may be dispensed within its borders." However, this general rule alone cannot dispose of a specific case. It is a grave misreading of *LaRue* and the other Twenty-first Amendment cases to conclude this "broad power" which provides an "added presumption in favor of the validity of the state regulation" means absolute power in which there is no place for First or Fourteenth Amendment objection. *California v. LaRue, supra* at 118.

Justice Rehnquist recognized that the Twenty-first Amendment cases do "not go so far as to hold or say that the Twenty-first Amendment supersedes all other provisions of the United States Constitution in the area of liquor regulations" and warned that though the powers be broad, "This is not to say that all such conduct and performance is without the protection of the First and Fourteenth Amendments." *LaRue* at pages 115, 118. He did "not disagree with the District Court's determination that these regulations on their face would proscribe some forms of visual presentation that would not be found obscene under *Roth* and subsequent decisions of this Court." *California v. LaRue, supra* at 116.[1]

State regulation under the Twenty-first Amendment has constitutional parameters and the ruling of *LaRue* merely emphasizes that this constitutional provision provides an added presumption of valid regulation. A number of recent United States Supreme Court cases recognize the state li-

---

[1]It is this conclusion by the *LaRue* majority which led Justice Marshall, in dissent, to find the challenged regulations unconstitutional as being overbroad.

quor license power must be executed in conformity with the due process and equal protection clauses of the United States Constitution. *Wisconsin v. Constantineau*, 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507 (1971); *Moose Lodge 107 v. Irvis*, 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972). In this case we must assume our judicial duty of determining whether there has been proof of conduct outside the protections of the First or Fourteenth Amendments.

Here a fully clothed female employee of the defendant-manager danced on a stage separated from the audience during which she removed much of her clothing so as to expose her breasts. This dancing act was done inside a licensed liquor establishment which prohibits minors from entering, for which no "pandering" was alleged or shown, and was done before patrons who had notice of the entertainment and who freely entered and could freely depart. It is this act in this context which precipitated the arrest and resulting prosecution, though there was no breach of the peace or any suggestion of criminal or disruptive behavior on the part of the patrons, or other indication that the entertainment was causing immediate "dangerous" results. *Schenck v. United States*, 249 U.S. 47, 52, 63 L. Ed. 470, 39 S. Ct. 247 (1919); *Dennis v. United States*, 341 U.S. 494, 95 L. Ed. 1137, 71 S. Ct. 857 (1951); *Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969).

Given these facts the prosecution would have us agree that by mere declaration of the Twenty-first Amendment the state may prohibit this "topless" behavior absent any showing of its non-First Amendment character or affirmatively of its obscenity. I cannot agree.

The performance of dance for an audience as a method of expression in the absence of proof of obscenity requires First Amendment protection. *Schacht v. United States*, 398 U.S. 58, 26 L. Ed. 2d 44, 90 S. Ct. 1555 (1970).

The fact that we may be dealing with entertainment and not the verbal exposition of ideas is not determinative. *Kingsley Int'l Pictures Corp. v. Regents of the University,*

360 U.S. 684, 3 L. Ed. 2d 1512, 79 S. Ct. 1362 (1959); *Jacobellis v. Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676 (1964). The First Amendment has been found to embrace amusement and entertainment as well as the exposition of ideas.

> The line between the informing and the entertaining is too elusive for the protection of that basic [First Amendment] right. . . . Though we can see nothing of any possible value to society in these magazines, they are as much entitled to the protection of free speech as the best of literature.

*Winters v. New York,* 333 U.S. 507, 510, 92 L. Ed. 840, 68 S. Ct. 665 (1948). This view was affirmed in the post-*Roth* decisions as exemplified in *Stanley v. Georgia,* 394 U.S. 557, 566, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969): "The line between the transmission of ideas and mere entertainment is much too elusive for this Court to draw, if indeed such a line can be drawn at all."

This authority, of course, does not mean that all communicative conduct is free from state regulation in the same fashion as pure speech might be. *United States v. O'Brien,* 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968) rejected the notion "that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

The majority position cannot be sustained by its reliance on *Crownover v. Musick,* 9 Cal. 3d 405, 509 P.2d 497, 107 Cal. Rptr. 681 (1973); *Hoffman v. Carson,* 250 So. 2d 891 (Fla. 1971), and *Portland v. Derrington,* 253 Ore. 289, 451 P.2d 111 (1969). In *Crownover,* like *LaRue,* the ordinance before the court was upheld as being constitutional on its face. In *Hoffman,* the court construed the Florida statute to apply to nudity which was "lascivious" and not nudity per se. In applying the statute the court found an element of pandering present and noted that the spontaneity of the dancer's self-expression "was in direct proportion to the monetary consideration she received from the barflies

rather than from her absorption in the artistry of her dance." *Hoffman v. Carson, supra* at 894.

In *Portland,* at page 292, the court held that "When nudity is employed as sales promotion in bars and restaurants, nudity is conduct. As conduct, the nudity of employes is as fit a subject for governmental regulation as is the licensing of the liquor dispensaries and the fixing of their closing hours." This position, without supporting authority in the Oregon opinion, was expressly rejected by the court in *LaRue.* The fact that communicative conduct is not as free from state regulation as pure speech was recognized in *LaRue,* at page 118, when the United States Supreme Court deemed the regulations being sustained only prohibited " 'Performances' that partake more of gross sexuality than of communication." The Supreme Court noted, however, that some of the not so "gross" performances would come "within the limits of the constitutional protection of freedom of expression . . ." This statement is directly inconsistent with the approach taken by the Oregon court in *Portland v. Derrington, supra,* and that case cannot be relied on as persuasive authority. What is necessary is to measure and balance the interests of the state against the communicative behavior. Note, *Symbolic Conduct,* 68 Colum. L. Rev. 1091 (1968).

Moreover, a presentation's unconventional manner or commercial setting does not deny First Amendment protection. *Smith v. California,* 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215 (1959); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963).

What we as individuals may deem obnoxious, vulgar, distasteful or repulsive, even where we might conclude, as in this case, that the behavior demeans a person's self, is no lawful justification, absent a showing of obscenity, for permitting the governmental suppression by criminal laws of the disapproved expression.

The issue before us is whether the alleged unlawful act of having a female "topless" during part of the dance removes the constitutional protection to which the dance is

entitled. This question can only be answered under our standards of obscenity and no contention or proof was forthcoming in this case that the "topless" character of the dance made the performance obscene. A review of the whole context is required. *Roth v. United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957); *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973).

It is important that we closely abide by the currently controlling obscenity standards for

> the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of "contemporary community standards."

*Smith v. California, supra* at 165.

I again emphasize, I do not find the question of the power of the state or its subdivisions to promulgate liquor regulations is before us. RCW 66.08.120. We recognize the broad scope of authority to regulate under the Twenty-first Amendment given to the appropriate legislative or administrative bodies. This authority is limited only by constitutional considerations, the reasonable exercise of the police power, and the rejection of arbitrariness and capriciousness in rule making. *State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 96-99, 508 P.2d 149 (1973); Administrative Procedure Act, RCW 34.04.130 (6). The question here is different, however, from *LaRue,* where the administrative regulations on their face were not found to be irrational given the record before it. Here we deal with the application of an enactment absent any allegation or offer of proof under the obscenity standards, and therefore First Amendment considerations cannot be ignored.

I would affirm the trial court.[2]

ROSELLINI, J., concurs with UTTER, J.

---

[2] I decline to reach the equal protection contention on the merits, as the majority does, because of my First Amendment disposition. However, by reaching the merits the majority opinion is caught in a curious

218

FINLEY, J. (dissenting)—I cannot agree with the majority that the decision of the United States Supreme Court in *California v. LaRue*, 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972) is dispositive of the constitutional issues raised in the instant case. As I read the *LaRue* case, it is much more limited in scope and effect than the broad interpretation given to it in the majority opinion authored by Wright, J. The challenge of unconstitutionality involved in the *LaRue* case pursuant to the federal Declaratory Judgment Act was directed broadscale at the regulations of the California Department of Alcoholic Beverage Control, and the very broad issue of whether the regulations *on their face* violated First Amendment protected "speech." The opinion in *LaRue* by Mr. Justice Rehnquist, as I read it, very carefully points out that no specific acts or conduct violative of the California liquor regulation were specifically and directly involved and before the court. In other words, no specific application of the California liquor regulations (either involving or not involving obscenity) was before the court in the *LaRue* case. For the reasons indicated herein, I disagree with the majority and agree with the dissenting views expressed by Justice Utter.

inconsistency of deeming a citizen may be denied equal protection of the laws in seeking employment for a position, which in their opinion is criminal. The majority's conclusion that there is no discrimination because the female may still work begs the question since such an answer merely redefines the employment sought.